United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Ninth Circuit. My colleagues, Judge Acuda and Judge Gould, are appearing by video. The lawyers are appearing variously. And welcome to the new world of oral arguments. And we will begin with the first case in the calendar, United States v. Blanco. Counsel should reserve time. We will not count the time for you. I will probably give you an extra minute if you use up your time for rebuttal. Thank you. I won't give you the time. All right. United States v. Blanco. Ms. Phillips. I'm sorry. Good morning, Your Honor. It pleases the court, Carolyn Phillips appearing on behalf of the appellant, Jacob Blanco. This is a matter before the court in an appeal of the district court's decision to deny a motion to suppress evidence as a result of a search warrant. The basis of that motion is the fact that the affidavit omitted material facts such as, and particularly, that the IP address that is attributed to Mr. Blanco that ends in 95 had no nexus to the crime that occurred on March 27, 28, 2017. The basis of the search warrant was that there were several IP addresses that had access to an account with Musical.ly, which became TikTok eventually. There were no records found for the account that had been identified in a subpoena to the Musical.ly application. As 233, those records were never requested, and the records that were requested were for 223, but no records were produced for 233, and 233, I'm sorry, 233 was never requested, and 233, no records were produced. The affidavit of Detective Wilkin requested a broad search, a broad search of the individuals at a certain address, their electronics, their persons, and their car. Can I just recap what I understand the facts that were in the warrant to be, or that could have been, or would have been in the warrant had the omission that you're talking about been added, and that is that the 233 address was connected to the March 29th communication. That was the offense, is that right? Yes, the 233 IP address actually was the IP address that created an account. Created the account and was connected to the communication. Yes, that would be March 27th. The 95 IP account, and that traced to a certain address in Fresno, and the 95 account traced to the same address in Fresno, and was connected to Blanco. Yes. And the 95 address was used on March 30th, April 1st, twice on April 2nd, and on April 4th. Yes. All right, so we have Blanco connected to the address and to a IP address at the address, and it's the same address from which the crime was committed. Is that right? Well, no, not necessarily. The 233 IP, no records were ever produced because none were requested. So whatever address that particular... But we know that it was the, that that was the account that created the account, and this I'm not sure about, as I understand it, from which the communication, we know that it was the account from which the communication that was the offense came. Yes, but I... So the fact that we don't have a login as well doesn't really matter. It was traced, the offense was traced to that account. The offense was traced to the IP address 233 to that account, yes. So what I said is correct, therefore, that the 95 account was traced to the same physical address as the IP address from which the crime was committed. And my response, Your Honor, would be that, no, that's not necessarily true. The IP address was from a different, could be from a different device. There wasn't any... Could be from a different device, but it was from the same physical address. Not necessarily. I don't, I don't believe at the time, at the time that this affidavit was completed, there was no information regarding what the physical address was for IP 233. No, no one knew. I mean, those, the records were requested from... Well, how did they find that address in Fresno then? That was through IP 95. Okay. So, so you have, you have a number of different IP addresses. The IP address that actually created the account that was involved in the crime was .233. But weren't they all using the same account name? So, the account name SummerMe001 created, I guess, in March 22nd, something like that. And so this alias, SummerMe001, is the same. I mean, obviously the IP address just has to do with which internet service provider the device or the account name was using at the time. And of course, that can change depending on whether he's using it at his phone or he's doing this at work or doing it at home. But, but it was clearly the same account name throughout the, the incident. Isn't that correct? Yes, it was the same account name. However, that account... And then the .95 IP address connects that account name to the West Lexington apartment. Isn't that right? Yes, however, that, that IP address, .95, was not connected to the account on the date of the incident. Well, what difference does that make? There's a couple of T-Mobile accounts too. And obviously the T-Mobile was, the person was using Musical.ly on his telephone, which could be anywhere. So it really doesn't, I don't see why that matters. Well, partly because there's no nexus to the crime itself. Well, the account name has a nexus to the crime. The, the emails to victim one were from this RME-001 account. So what ISP happens to be, I don't understand that. I mean, the ISP leads, led the detectives to a particular address, but the crime was committed by SummerMee-001. Am I right? Right. What, what, what you have Musical.ly account, the SummerMee, is a, is a locally created account to buy a particular IP address. And in this instance, it was 233. Any other IP address? Oh, well, it could be, it could be, log into Amazon.com. I can do it at work, I can do it at home, I can do it on my iPhone, but still my account name. It doesn't really matter what internet service provider I happen to be using. Sure, why the internet service provider really matters in this context. Right, I think it's the IP address that, that is the, of interest because what I was going to say about the Musical.ly account, it is actually a locally based account. It's not a cloud account, meaning an IP address can access the account, but they cannot access the chat that was created by the original IP address. So, for instance, the chat that was created by 233 is not going to be accessed by a different IP address. I mean, there isn't, I mean, none of that information obviously is included in the affidavit. And frankly, I'd have to say that the, the information that was included in the, in the affidavit is incomplete. I think the government would agree that the subpoena to Musical.ly in terms of getting your log records was an incomplete log because it started on the date of March 30th after the incident itself. But these IP addresses could be, are computers that are located at different places, not necessarily all, as you indicated, not necessarily all in the same place. However, there isn't any indication that the IP address that was affiliated with Mr. Blanco, 9-5, actually participated or had a nexus to the crime that was committed days before. Other than that, it is the same email address the following day. It would be the same, you're saying the same account number. Same account number, right. The same account for the summer meeting, 001, the same account that he accessed. On the following, on the following day. Exactly, but, but there was no connection to the crime that had occurred the day before. We have a different IP address that is precluded from accessing whatever chat may have been created by the .233 IP. So, but there is no separate information that would tie up the .95 to the incident that occurred from which this search warrant was drafted. It was drafted based on this one incident, March 28th, March 29th. And it's the basis of our argument is that there is no nexus between the two. And the missing, the omission of the fact that this 9-5 IP address actually did not have access to the account on the day that the crime occurred. And based on that omission. I'm sorry, you're over your time, but I do have one more question. How do we know it didn't have access to the account? There is no evidence of that. That's different, that's different from it didn't have access. We're just, there's no direct evidence that it did have access. The municipality logs do not, did not produce any information that would indicate that there was any contact during that period of time by 9-5. If there had been an investigation. Okay, I see. Your time is up. We'll give you a minute in rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court, David Gappa for the United States. The district court did not clearly err when it found that there was a substantial basis for the issuing judge to find probable cause that there was a fair probability that evidence would be found at the locations to be searched. Did we review the district court for clear error? I thought we reviewed the magistrate judge deferentially, but we reviewed the district court for clear error? Yes. As to what? As to the probable cause determination? As to the facts, but as to the clear, probable cause determination? Probable cause determination would be reviewed de novo. Right. So what's the clear error? There was no clear error. What are we reviewing for clear error? The district court's factual findings that there were no false statements or omissions in the affidavit that Detective Wilkins submitted to the issuing magistrate. I see. Okay. And that issuing magistrate had a substantial basis to conclude that there was a fair probability that evidence would be found at the locations to be searched. That's based on the investigation that had been presented to him through the affidavit of Detective Wilkins. And specifically, Detective Wilkins articulated that a detective in New York had been advised by parents of a 6-year-old girl that she had been contacted while using the parent's iPad by somebody using the SummerMe001 Musical.ly account. And that person had, over the course of March 28th and 29th of 2017, engaged in very graphic, sexually explicit communications with that victim and requested sexually explicit content from the victim. Those images were sent. The iPad was analyzed. It was extracted. It was determined by the detective in New York that the SummerMe001 account had been used. That detective issued a subpoena to Musical.ly to get subscriber information for that account. The return from Musical.ly provided subscriber information, which showed that the account had been created by an IP address determined to be located in Fresno. It ended in .233. The account had been created on March 22nd, 2017. And there had been other accesses of that account. And I believe from the court's questionings, the court has the correct focus. It's the use of that account and that account and who was connected to the account and where evidence of use of that account was that was really the central focus. But did the affidavit or the application recognize that there was no direct connection on March 29th to the 095 IP account, which is the one that's connected to Blanco? The affidavit from Detective Wilkin did not explicitly state from which IP address a connection was made on March 28th or 29th. It appears that he didn't have a basis to make that statement. He didn't have a basis to make that statement? Because the records from Musical.ly showed logins and IP activity that began on March 30th. We don't know what to make of that set of information that Musical.ly provided. We don't know whether Musical.ly failed to keep records from the account creation date on March 22nd through March 30th. We don't have an explanation for why. Well, did anybody ever ask Musical.ly for their right? At some point, the .233 account was transposed as being a .223 account. When the inquiry was made to Musical.ly, was it ever made correctly about the .233 account? I'm sorry. Was a .233 account, was Musical.ly ever asked about the .233 account and its connection to the March 29th login? No. Never? Not to this day? Correct. There was an attempt to get those records. And as the Court knows, that was unfortunately hindered by the typographical error transposing the 2 for the 3. So that's why counsel says that the records were not requested. The records were the subject of a request, and that was an attempt to get those records. But unfortunately, due to the typographical error, the records for the .233 account were never obtained. But what they did get were records related to the .95 address, and that was important because then they could obtain a search warrant for records for that subscriber account for Comcast. Notably, both accounts, the .233 account as well as the .95 account, were Comcast accounts. So the search warrant went to Comcast for subscriber information for both of those accounts. For the .95 account, there was an email address, jacobblanco, at Comcast.net, and investigation revealed that that account was going to the address in Fresno where there was an apartment, and his name, Blanco's name, was on the lease. Surveillance confirmed that his vehicle was parked in front of the apartment. And the records of the police department revealed that Blanco and his roommate had lived together and had been associated for five or six years. So I guess the main thing that the defendant is claiming was omitted and should have been included was that the .95 ISP account, there was no evidence connecting it to the communication on March 28th or 29th. And it's not in the declaration or the application. Is that right? That's correct. But, and I believe with the court's questioning, the question ultimately would be, what if that information, which allegedly was omitted or was omitted, was provided? And so if Detective Wilkin had included all of the details of those Comcast records that were provided in response to that search warrant, it would have shown that the account had been accessed on March 30th, on April 1st, April 2nd, April 4th, and it had been accessed on five different times from four different IP addresses, including the account ending in .95. That was the account going to Blanco's apartment. So there was additional evidence, frankly, that Wilkin could and probably should have included. Blanco treats that as exculpatory evidence that should have been submitted, and because it wasn't, that he was entitled to a Franks hearing. The District Court looked at the record and said that there was a substantial basis for issuance of that search warrant because there was enough probable cause to believe that the account was being accessed from those multiple locations, including the location where the account ending in .95 was being accessed in Fresno. The District Court never really made any factual findings. I mean, I guess we're fairly loose about that, even though the statute says he was supposed to do it, but he never, I mean, there's nothing in anything he said, including a reconsideration, that suggests, I mean, he said he read things, but he doesn't cite any fact about anything. What the District Court did do is issue a one-page written order, which then in writing confirmed what the court had stated orally. He said that he was reflecting the government's legal conclusions, but he never said he was adopting the government's factual conclusions, and then when they came back to him, he said, well, I've looked it over and I still think the same thing, but he never said what he thought. Correct. He had, when he accepted the motion pro se from Blanco, stated to Blanco, several things could happen here. I could review this and determine I need to have a hearing. I might have the government respond. He had the government respond and then determine there was no need for a hearing. So implicitly, the District Court found that there was no need for a hearing. It's at least not good practice when you agree with that from the District. It leaves us with a gap. Understood, and the record, perhaps not perfect, could have been better, but it does support the finding that there was probable cause for that search warrant, and had the omitted information been included, that search warrant would have been stronger because it would have showed the additional connections from multiple IP addresses and particularly would have confirmed the use of mobile devices. Those T-Mobile accounts indicated that it was being accessed from a phone. Notably, the initial response from Musical.ly established that the account, Musical.ly account, SummerMe001, had been set up on March 22nd using a Samsung mobile device. Opposing counsel suggests that every device is limited, so every time the account is accessed from a different device, the user whose account name is being used would be precluded from following up on prior communications from a different ISP. Is that correct to your knowledge? No. Musical.ly account is what was central to the commission of the crime. It wasn't necessarily any particular device. He might have used the device at his workplace with his phone. He might have used his work computer. He might have then communicated with the victim from his residence using either a phone or a computer. It wouldn't necessarily have mattered which device. It's the account, which is online, that has the information, and presumably those communications would have been retained in that account, so somebody could have accessed it in one location and gone back from a different location and still continued with the same communications. So unless the court has any other questions, we believe that the other issues have been fully briefed. Thank you. I think our time is up. Ms. Phillips, you have one minute. We can't hear you. Yes, thank you. I think what's important is that we have an affidavit that's supposed to be setting forth for a magistrate regarding whether or not there's probable cause. What we have is a statement that's missing a critical piece of information, whether or not it would have mattered. I think having an IP address that accesses an account post-incident, and I don't see that there's any evidence that indicates that musically account can be accessed, those historical chats can be accessed by any IP. Counsel, Judge Gould, if I could interject a question. The standard here is probable cause. Yes. It's not certainty of cause. So what's your best argument that there was not probable cause to support the search? Thank you, Your Honor. The main issue is whether or not there's a nexus between the focus of the search warrant, which in this case is IP.95, to the crime that's been committed for which a search is requested. And it's a very broad search. And the position of the appellant is that the information that was missing from the affidavit was material and misled the magistrate to believe that a suspect who used .233 to set up this account was the same person who was accessing on .95 when, in fact, there was no such evidence of that. And, therefore, there's no probable cause because there lacks a nexus. Okay. Thank you. Thank you. Okay. Your time is up. Thank you very much. United States vs. Blanco is submitted.
judges: GOULD, BERZON, IKUTA